UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO MARRON,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>S. SAHA, M.D., et al.,<br><br>　　　　　　　　　　Defendants. | Case No.: 19cv1344-BAS (MSB)<br><br>**REPORT AND RECOMMENDATION TO DISMISS CASE FOR FAILURE TO PROSECUTE** |

This Report and Recommendation is submitted to United States District Judge Cynthia Bashant pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(c) and 72.3(e)-(f) of the United States District Court for the Southern District of California.  For the following reasons, the Court **RECOMMENDS** that the instant matter be **DISMISSED WITH PREJUDICE**.

## I.　　BACKGROUND

On July 18, 2019, Plaintiff, who was detained at Substance Abuse Treatment Facility and State Prison ("SATF") in Corcoran, California, and proceeding pro se, filed the instant action pursuant to the Civil Rights Act, 42 U.S.C. § 1983.  (ECF No. 1.)  His Complaint alleges that doctors at both R.J. Donovan Correctional Facility ("RJD") and SATF violated his 8th Amendment rights by failing to provide medical treatment for his knee condition.  (Id. at 12-13.)

Defendants filed a Motion to Dismiss on October 28, 2019, which Plaintiff opposed. (See ECF Nos. 7 & 9.) The Honorable District Judge adopted this Court's Report and Recommendation to deny Defendants' Motion to Dismiss [ECF No. 10] on June 16, 2020. (ECF No. 11.)

On July 14, 2020, shortly after Defendants filed their Answer to Plaintiff's Complaint and while Plaintiff was still in custody at SATF, the Court issued an order scheduling a telephonic Case Management Conference ("TCMC") for August 27, 2020 before Magistrate Judge Michael S. Berg. (ECF No. 14; see also ECF No. 13.) Because Plaintiff was incarcerated at the time, the Court ordered counsel for Defendants to arrange Plaintiff's telephonic appearance from prison at the TCMC. (Id. at 2.) On August 27, 2020, at the time set for the TCMC, Defendants' counsel called the Court, but Plaintiff did not appear with him. (ECF No. 15.) Defense counsel advised the Court that according to the litigation coordinator at the prison where Plaintiff was last housed, Plaintiff had paroled effective August 13, 2020 and was out of custody. (See ECF No. 16 at 1; ECF No. 20 at 2.) The Court reset the TCMC for October 7, 2020 and again ordered counsel for Defendants to arrange the joint call to chambers. (See ECF No. 16.)

Plaintiff again failed to appear at the October 7, 2020 TCMC, despite the Court serving the order to the Plaintiff's address of record and Defense counsel's office serving Plaintiff with the Court's order at an alternative address that Defendants' counsel obtained from Plaintiff's parole agent. (ECF No. 18; see also ECF Nos. 16, 17, 20.) Plaintiff did not contact the Court or Defendants' counsel or update his contact information from the prison where he had been housed when he filed his case. (See Docket; ECF No. 20 at 2.)

The Court then issued an Order to Show Cause ("OSC"), requiring Plaintiff to explain "why sanctions should not be imposed for failure to attend two telephonic Case Management Conferences on August 27 and October 7, 2020," and to "provide or confirm his current address and, if applicable, telephone number to the Court." (ECF No. 19.) The OSC informed Plaintiff of his obligation to update the Court and opposing

counsel with his current address and contact information. (Id. at 2.) The Court ordered: (a) Plaintiff to file a declaration addressing the issues raised by the Court no later than October 21, 2020; (b) Defendants' counsel to file a declaration explaining the steps he had taken to arrange Plaintiff's appearance by October 28, 2020; and (c) a hearing to address the OSC on November 2, 2020. (Id.) The Court served the OSC by U.S. Mail to both Plaintiff's address of record and the address Defendants' counsel obtained from Plaintiff's parole officer. (See ECF No. 19 (docket text indicating "[a]ll non-registered users served via U.S. Mail Service at both addresses").) Defendants' counsel's office also served a copy of the OSC at the address he had obtained from his Plaintiff's parole officer. (ECF No. 20 at 2.)

Though not required to do so, Defendants' counsel contacted Plaintiff at a telephone number he obtained from Plaintiff's parole officer on October 28, 2020. (Id. at 3.) Plaintiff indicated that he had not received the Court's OSC, but that he intended to pursue this litigation and he would call in to the OSC hearing. (Id.) For the first time on October 28, 2020, mail that the Court sent to Plaintiff's address of record was returned to the Court as undeliverable. (See ECF Nos. 21, 22.)

Plaintiff called in to the Court's line on November 2, 2020, at the time scheduled for the hearing. (ECF No. 23.) Based on his appearance and the representations of Defendants' counsel in October 28, 2020 declaration, the Court vacated the hearing on the OSC and proceeded to hold a TCMC regarding the progress of the case. (ECF No. 24.) During that conference, Plaintiff indicated that he had been released on parole and he intended to obtain counsel and continue with his case. He further stated that he would like to participate in settlement negotiations with Defendants once more before the Court issued a Scheduling Order. The Court informed Plaintiff of his obligation to update his contact information with the Court, and diligently prosecute his case, with or without counsel. At the conference, the Court and parties jointly selected November 16, 2020, at 1:30 p.m. for a Zoom CMC to further discuss settlement, and if needed, scheduling of the case. The Court told Plaintiff orally that it was issuing an order

requiring Plaintiff to provide updated contact information in writing to the Court no later than November 4, 2020. (See id. at 1.) The Court also informed Plaintiff that if he did not provide the Court with updated information, it would not be able to send him the information he would need to participate in the Zoom CMC. (See id. at 1-2.) Plaintiff indicated that he understood the requirements and consequences addressed by the Court. The same information and requirements were set out in the Court's order after the CMC. (Id.) Plaintiff did not file updated contact information with the Court by November 4, 2020 and has not done so to date. (See Docket.)

On November 16, 2020, the Court held the Zoom CMC. Defendants' counsel appeared, but Plaintiff did not. (ECF No. 25.) The Court is not aware of any contact from Plaintiff to the Court or Defendants' counsel regarding this case since November 2, 2020. The Court issued a second Order to Show Cause on November 18, 2020, requiring Plaintiff to address the failures noted above no later than December 11, 2020, and informing him that failure to file a responsive declaration would result in this Court recommending this case be dismissed with prejudice. (ECF No. 26.) Mail sent to Plaintiff at his address of record was again returned to the Court on December 9, 2020. (ECF No. 27.) At the time of this order, Plaintiff has not provided any response to the Court's November 18, 2020 Order to Show Cause. (See Docket.)

## II.     LEGAL STANDARD

The Civil Local Rules require pro se parties to "proceed with diligence to take all steps necessary to bring an action to readiness for trial," just as those represented by counsel must. CivLR 16.1(b). A person representing himself is bound by both the Civil Local and Federal Rules, and "failure to comply therewith may be ground for dismissal or judgment by default." CivLR 83.11(a). Further, pro se litigants "must keep the court and opposing parties advised as to current address." CivLR 83.11(b). "If mail directed to a pro se plaintiff by the clerk at the plaintiff's last designated address is returned by the Post Office, and if such plaintiff fails to notify the court and opposing parties within 60

///

days thereafter of the plaintiff's current address, the court may dismiss the action without prejudice for failure to prosecute." Id.

As relevant here, Federal Rule of Civil Procedure[1] 16 provides for sua sponte sanctions, including dismissal, where a party "fails to appear at a scheduling or other pretrial conference," or "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1) (referring to Fed. R. Civ. P. 37(b)(2)(A)(ii)-(vii)).  Rule 41(b) provides for involuntary dismissal on the merits when a "plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order."  Fed. R. Civ. P. 41(b).  Though Rule 41(b) specifically permits for involuntary dismissal pursuant to a defendant's motion, (Fed. R. Civ. P. 41(b) ("a defendant may move to dismiss the action or any claim against it" under qualifying circumstances), case law clarifies that courts may dismiss cases sua sponte under the rule.  Hells Canyon Pres. Council v. U.S. Forest Serv., 403 F.3d 683, 689 (9th Cir. 2005) ("[T]he consensus among our sister circuits, with which we agree, is that courts may dismiss under Rule 41(b) sua sponte.") (citing Olsen v. Mapes, 333 F.3d 1199, 1204 n.3 (10th Cir. 2003) ("[T]he Rule has long been interpreted to permit courts to dismiss actions sua sponte for a plaintiff's failure to prosecute or comply with the rules of civil procedure or court's orders.")).  A dismissal pursuant to Rule 41(b) operates as an adjudication on the merits, unless the dismissal order states otherwise.  Fed. R. Civ. P. 41(b).

However, "[d]ismissal is a harsh penalty and is to be imposed only in extreme circumstances." Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986).  More specifically, dismissal may only be imposed where the behavior being sanctioned was "due to willfulness, fault, or bad faith." Fjelstad v. Am. Honda Motor Co., Inc., 762 F.2d 1334, 1337 (1985) (internal quotation and citation omitted).  Courts may consider not only the effect of sanctions on the party being disciplined, but also the deterrent effect

---

[1] All future references to "Rules" refer to the Federal Rules of Civil Procedure unless otherwise noted.

on future litigants and their counsel. <u>Nat'l Hockey League v. Metro. Hockey Club, Inc.</u>, 427 U.S. 639, 643 (1976). Moreover, when considering whether to impose a sanction of dismissal, courts must weigh five factors:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits and (5) the availability of less drastic sanctions.

<u>Thompson v. Hous. Auth. of City of L. A.</u>, 782 F.2d 829, 831 (9th Cir. 1986); <u>see also</u> <u>Sanchez v. Rodriguez</u>, 298 F.R.D. 460, 464 (C.D. Cal. 2014). Though a judge is to consider all of these factors, this multifactor test is not "a mechanical means of determining what discovery sanction is just." <u>Valley Eng'rs Inc. v. Elec. Eng'g Co.</u>, 158 F.3d 1051, 1057 (9th Cir. 1998). It simply identifies the factors for the court's consideration when determining the just outcome. <u>Id.</u>

### III.   DISCUSSION

Considering that the order setting the August 27, 2020 Case Management Conference was issued on July 14, 2020, and served on Plaintiff at SATF without being returned, (<u>see</u> ECF No. 14, Docket), the Court understands that Plaintiff received notice of the Case Management Conference before his August 12, 2020 parole date. However, it appears that Plaintiff made no effort to attend the conference, contact opposing counsel, or update his information with the Court. Since Plaintiff's failure to appear on August 27, 2020, the Court requested and received the voluntary assistance of Defendants' counsel to locate Plaintiff. When he finally appeared telephonically on the date scheduled for first OSC (November 2, 2020), the Court warned Plaintiff of his obligations, and Plaintiff expressed an understanding of what he needed to do to avoid the dismissal of his case. Since then, Plaintiff has failed to comply with court orders by (1) not providing updated contact information; (2) not providing necessary information in advance of the Zoom Case Management Conference; (3) not attending the Zoom Case Management Conference or contacting the Court or Defendants' counsel regarding the

same; and (4) not responding to this Court's second Order to Show Cause.  Further, Plaintiff has not contacted this Court or opposing counsel to communicate any requests for assistance or variance.  Because it appears from Plaintiff's conduct that he has abandoned his case, the Court finds that the relevant factors warrant dismissal.

### A. **Plaintiff's Failure to Comply with Court Rules and Orders was Willful**

Before imposing terminating sanctions, due process requires that a Court find that a litigant's conduct was the result of "willfulness, bad faith, or fault." Hyde & Drath v. Baker, 24 F.3d 1162, 1167 (9th Cir. 1994) (citing Wyle, 709 F.2d at 589).  The willfulness standard simply requires that the "punished conduct [is] within the litigant's control." Fjelstad, 762 F.2d at 1341.

In the instant case, both the Court and Defendants' attorney have made significant efforts to ensure Plaintiff knew what he needed to do to pursue his case and had the opportunity to do so if he wished to.  Despite being given notice and being ordered to do so, Plaintiff has not updated his contact information with the Court, did not attend the Case Management Conference, and did not respond to this Court's second Order to Show Cause.  Further, he has not communicated with the Court in any way since November 2, 2020.  After the Court's conversation with Plaintiff on November 2, 2020 and considering his subsequent inaction in the face of court orders, the Court can only interpret Plaintiff's failures as willful.

### B. **Five-factor test**

Having found that Plaintiff's failure to comply with Court rules and orders was willful, the Court now evaluates the five factors considered in this circuit when evaluating whether to impose terminating sanctions.  For the reasons described below, this Court recommends **DISMISSING** this case in its entirety.

#### 1. **Public Interest in Expeditious Resolution of Litigation**

The Ninth Circuit has repeatedly stated that "[t]he public's interest in expeditious resolution of litigation always favors dismissal." Yourish v. Cal. Amplifier, 191 F.3d 983, 990 (9th Cir. 2002).  That factor is no different in this case, as it makes little sense to

continue to devote court and government resources to a case that Plaintiff appears to have abandoned.

### 2. The Court's Need to Manage its Dockets

Because Plaintiff's repeated failure to update his contact information and attend court hearings has repeatedly required the Court's attention, this factor weighs in favor of dismissal. While the Court recognizes that it could simply issue a scheduling order at this juncture without Plaintiff's input, doing so would only prolong the disruption caused by an evidently abandoned case.

### 3. The Risk of Prejudice to Defendants

When assessing prejudice, courts consider whether the "plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." Malone v. U.S. Postal Serv., 833 F.2d 128, 131 (9th Cir. 1987). Though the pendency of a lawsuit alone is insufficient prejudice to warrant dismissal (Yourish, 191 F.3d at 991), "[u]nnecessary delay inherently increases the risk that witnesses' memories will fade and evidence will become stale." Pagtalunan v. Galaza, 291 F.3d 639, 643 (9th Cir. 2002). A party's reason for defaulting is considered in relation to risk of prejudice to the party requesting sanctions. Yourish, 191 F.3d at 991. Even where no specific finding of prejudice is made, a lack of prejudice is not determinative where "counsel continues to disregard deadlines, warnings, and schedules set by the district court." Henderson, 779 F.2d at 1425.

Here, delay appears to be the only imminent prejudice caused by Plaintiff's failure to prosecute his case. However, Plaintiff has not provided any excuse for his failure to comply with court order and relevant rule or participate in this litigation. This unexplained delay does not counterbalance requiring Defendants to prepare to defend this case when it appears Plaintiff has abandoned it. Considering Plaintiff's lack of communication or explanation for the delay he is causing, this factor also favors dismissal.

///

### 4.     Public Policy Favoring Disposition of Cases on their Merits

The public policy in favor of disposing of cases on their merits is strong and weighs against dismissal. Pagtalunan, 291 F.3d at 643. However, in circumstances where the behavior of the party against whom dismissal is sought has impeded disposition on the merits, this factor "lends little support." In re Phenylpropanolamine (PPA) Prod. Liab. Litig., 460 F.3d 1217, 1228 (9th Cir. 2006) (collecting cases).

Plaintiff's actions in this case are preventing its progress toward resolution on the merits. In consideration of Plaintiff's request to engage in further settlement discussions prior to the opening of discovery, after the November 2, 2020 conference, the Court set a follow-up Case Management Conference and asked Defendants' counsel to come prepared to discuss settlement options. As discussed in the background section, the Court instructed Plaintiff regarding what he would need to do to participate in the conference and attempt to resolve the case. However, Plaintiff chose not to fulfill his obligations and appears to have abandoned this case. Without any further indication that Plaintiff is pursuing this case, the Court does not believe Defendants should be required to move forward toward litigation on the merits.

### 5.     Availability of Less Drastic Sanctions

A district court must consider the impact of a sanction, and whether a less severe sanction could adequately address a party's failure to engage in the discovery process. Malone, 833 F.2d at 131-32. Reviewing courts will consider whether the district court (1) discussed the feasibility of less severe sanctions, (2) imposed alternative sanctions prior to ordering dismissal, or (3) warned the party that dismissal was a potential sanction prior to ordering the same. Id. at 132. Warning a party that failure to comply with a court order will result in dismissal can satisfy the consideration of alternatives requirement. Id. at 132-33. Conversely, the Ninth Circuit has reversed dismissals due, at least in part, to a district court's failure to warn the non-compliant litigant that continued non-compliance will result in dismissal. Id. at 133 (collecting cases).

9

19cv1344-BAS (MSB)

In the instant case, where Plaintiff offers no reason for his failure to update the Court with his current contact information, attend court-ordered hearings, or respond to an Order to Show Cause, no sanction less severe than dismissal would cure the problem.  The Court has already tried to simply inform Plaintiff of his obligations.  (See ECF Nos. 19, 23, and 24.)  Next, the Court ordered Plaintiff to file a declaration showing cause for his failure to update his contact information or prosecute this case and specifically warned Plaintiff that failure to do so would result in this Court recommending that the case be dismissed. (ECF No. 26.)  Still, Plaintiff has not responded.  Monetary sanctions also seem ineffective.  All Plaintiff needed to do to avoid dismissal was provide a justification for his delay and begin participating in litigation.  Ordering him to pay money does not seem any more likely to induce his participation than the incentive of pursuing the damages he seeks in litigation.  Finally, simply issuing a scheduling order and permitting this case to go forward is also not an acceptable option.  Such action would likely impose unnecessary work of Defendants' counsel and the Court in the face of Plaintiff's abandonment of this case.  This factor, therefore, also favors dismissal.

However, the Court notes that if Plaintiff objects to this Report and Recommendation and responds to the concerns herein, such actions would change the Court's analysis and recommendation.

## IV.   CONCLUSION

For the reasons set forth above, this Court **RECOMMENDS** that the District Court issues an order **DISMISSING** this case.

**IT IS ORDERED** that no later than **January 27, 2021**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **February 10, 2021**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those

objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

The Court further **ORDERS** the Clerk's Office to serve this Report and Recommendation on Plaintiff both at his address of record, and at the address provided by Defendants' counsel in his Declaration.  (See ECF No. 20 at 3.)

**IT IS SO ORDERED.**

Dated:  December 28, 2020

Honorable Michael S. Berg
United States Magistrate Judge